UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

THOMAS H. COYLE, and
LINDA SUE COYLE,
 c/o Mary Ann and Thomas Coyle,

                           Plaintiffs,

          v.

CROWN ENTERPRISES, INC.,

                           Defendant.

**DECISION
and
ORDER**

**05-CV-891F**

**(consent)**

_____

CROWN ENTERPRISES, INC.,

                          Third Party Plaintiff,

          v.

 CON-WAY TRANSPORTATION SERVICES, INC.,

                          Third Party Defendant.

_____

APPEARANCES:          JOHN LLOYD EAGAN, JR., ESQ.
                          Attorney for Plaintiffs
                          905 Convention Tower
                          43 Court Street
                          Buffalo, New York 14202

                          ALTREUTER BERLIN
                          Attorneys for Defendant and Third Party Plaintiff
                          WILLIAM C. ALTREUTER, of Counsel
                          Market Arcade Complex
                          617 Main Street
                          Buffalo, New York 14203

                          BROWN & KELLY, LLP
                          Attorneys for Third Party Defendant
                          LISA T. SOFFERIN, of Counsel
                          1500 Liberty Building
                          Buffalo, New York 14202

## JURISDICTION

On April 11, 2006, the parties to this action consented to proceed before the undersigned.  The matter is presently before the court on Plaintiffs' motions for summary judgment (Doc. No. 45), filed February 19, 2008, and to preclude expert witness evidence (Doc. No. 58), filed April 28, 2008, and on Defendant and Third Party Plaintiffs' motions for summary judgment (Doc. No. 51), filed April 4, 2008, for sanctions (Doc. No. 56), filed April 22, 2008, and to strike Plaintiffs' affidavit (Doc. No. 69), filed June 6, 2008.

## BACKGROUND

On September 9, 2005, Plaintiffs Thomas H. Coyle ("Coyle"), and his wife, Linda Sue Coyle ("Mrs. Coyle") (together, "Plaintiffs"), commenced a personal injury action in New York Supreme Court, Erie County ("*Coyle I*"), seeking monetary damages for injuries sustained as a result of a February 7, 2003 incident ("the incident"), occurring at 850 Aero Drive, Cheektowaga, New York ("the Premises").  Named as Defendants in *Coyle I* are GLS Leasco, Inc. ("Leasco"), as the alleged owner of the Premises, C.C. Eastern, Inc. ("C.C. Eastern"), the alleged operator of a trucking terminal at the Premises, Central Transport International, Inc., ("Central Transport"), the holding company of Leasco and C.C. Eastern, and Centra, Inc. ("Centra"), the holding company of Central Transport (together, the "*Coyle I* Defendants").  According to Plaintiffs, the *Coyle I* Defendants are all Michigan corporations.  *Coyle I* Complaint ¶ 3.

On October 20, 2005, the *Coyle I* Defendants removed the action to this court (*Coyle I*, Doc. No. 1) ("Removal Notice"), asserting diversity of citizenship under 28

U.S.C. § 1332 as the basis for subject matter jurisdiction,[1] and filed an answer to the Complaint.

On December 8, 2005, Plaintiffs commenced in New York Supreme Court, Erie County the instant personal injury action ("*Coyle II*") seeking monetary damages for injuries sustained as a result of the February 7, 2003 incident.  Named as the sole Defendant in *Coyle II* is Crown Enterprises, Inc. ("Crown" or "*Coyle II* Defendant"), an entity Plaintiffs allege was hired by Leasco to maintain and control the Premises.  On December 22, 2005, Crown removed the action to this court asserting diversity of citizenship under 28 U.S.C. § 1332 as the basis for subject matter jurisdiction.  Crown's answer was filed on December 23, 2005.

On February 6, 2006, Crown moved to consolidate *Coyle I* and *Coyle II* in light of the fact that both actions seek recovery of monetary damages for personal injuries Plaintiffs sustained as a result of the February 7, 2003 incident.  On April 7, 2006, Crown filed a third-party complaint ("the Third Party Complaint") against Con-Way Central Express, a part of Con-Way Transportation Services, Inc. ("Third-Party Defendant" or "Con-Way").[2]  Con-Way's answer to the Third Party Complaint was filed on May 8, 2006.

---

[1] Defendants' removal of this action was never challenged and noting in the record indicates a lack of complete diversity among the parties.

[2] Although the record does not specify Con-Way's place of incorporation, even if Con-Way is a New York corporation and, thus, non-diverse, Con-Way's status as a Third-Party Defendant ensures that Con-Way does not destroy diversity jurisdiction.  *See Fidelity and Deposit Co. of Maryland v. City of Sheboygan Falls*, 713 F.2d 1261, 1266 (7th Cir. 1983) ("[I]t is clear that if a case is properly within the diversity jurisdiction and the defendant files a third party complaint against a resident of the plaintiff's state the court does not lose jurisdiction over the plaintiff's claim.") (citing *Fawvor v. Texaco, Inc.*, 546 F.2d 636, 638 (5th Cir. 1977), and 6 Wright & Miller, Federal Practice and Procedure § 1444).

On September 28, 2006, the undersigned denied the motion to consolidate *Coyle I* and *Coyle II*. Accordingly, *Coyle I* is before the undersigned on referral from Chief District Judge Arcara, whereas *Coyle II* is before the undersigned on consent. Despite the undersigned's denial of Crown's motion to consolidate *Coyle I* with *Coyle II*, the parties filed a series of duplicate motions, with identical supporting papers, in both *Coyle I* and *Coyle II*.

On February 19, 2008, Plaintiffs filed a motion for summary judgment (*Coyle II*, Doc. No. 45) ("Plaintiffs' Summary Judgment Motion"), identical to a summary judgment motion Plaintiff filed in *Coyle I* on February 14, 2008 (*Coyle I*, Doc. No. 31). The motion is supported by the attached Affirmation of John Lloyd Egan, Esq. ("First Egan Affirmation"), and Exhibits A through H ("Plaintiffs' Exh(s). __"). In opposition to Plaintiffs' Summary Judgment Motion, on April 4, 2008, the Crown filed the Affidavit of William C. Altreuter, Esq. (*Coyle II*, Doc. No. 50) ("First Altreuter Affidavit"), and an identical affidavit in *Coyle I*. (*Coyle I*, Doc. No. 37).

On April 4, 2008, Crown filed a motion for summary judgment (*Coyle II*, Doc. No. 51) ("*Coyle II* Defendant's Summary Judgment Motion), supported by the attached Affidavit of William C. Altreuter, Esq. ("Second Altreuter Affidavit"), exhibits, the Affidavit of Larry Jacobs ("Jacobs Affidavit"),[3] the Affidavit of Tommaso Briatico ("Briatico Affidavit"), a Statement of Uncontested Facts ("*Coyle II* Defendant's Uncontested Facts Statement"), and a Memorandum of Law ("*Coyle II* Defendant's Memorandum"). Crown seeks summary judgment against both Plaintiffs and Third Party Defendant Con-Way.

---

[3] On April 8, 2008, *Coyle II* Defendant separately re-filed the Jacobs Affidavit (*Coyle II* Doc. No. 52), to correct an e-filing error.

On April 4, 2008, the *Coyle I* Defendants filed the same motion with identical supporting papers *Coyle I*.  (*Coyle I*, Doc. No. 38).

On April 17, 2008, Plaintiffs filed in support of Plaintiffs' Summary Judgment Motion and in response to *Coyle II* Defendant's Summary Judgment Motion the Affidavit of John Lloyd Egan, Esq. (*Coyle II*, Doc. No. 54) ("First Egan Affidavit"), with attached exhibits.  Plaintiffs also filed the same motion with identical supporting papers in *Coyle I* on April 17, 2008.  (*Coyle I*, Doc. No. 42).

On April 22, 2008, the *Coyle II* Defendant filed a motion to preclude Plaintiffs from offering expert evidence (*Coyle II*, Doc. No. 56) ("*Coyle II* Defendant's Sanctions Motion"), supported by the attached Affidavit of William C. Altreuter, Esq. ("Third Altreuter Affidavit"), and exhibits.  *Coyle I* Defendants filed the same motion with identical supporting papers in *Coyle I* on April 22, 2008.  (*Coyle I*, Doc. No. 43).

On April 25, 2008, Con-Way joined in the consent to proceed before the undersigned filed by Plaintiffs and the *Coyle II* Defendants on April 11, 2006 in *Coyle II*. (*Coyle II*, Doc. No. 57).

On April 28, 2008, Plaintiffs filed a motion to preclude the *Coyle II* Defendant from offering expert evidence (*Coyle II*, Doc. No. 58) ("Plaintiffs' Sanctions Motion"), supported by the attached Affirmation of John Lloyd Egan, Esq. ("Second Egan Affirmation"), and also filed the same motion with identical supporting papers in *Coyle I*. (*Coyle I*, Doc. No. 44).

On May 5, 2008, the *Coyle II* Defendant filed in opposition to Plaintiffs' Sanctions Motion the Affidavit of William C. Altreuter, Esq. (*Coyle II*, Doc. No. 61) ("Fourth Altreuter Affidavit"), with attached exhibits.  *Coyle I* Defendants filed the same papers in

*Coyle I* also on May 5, 2008.  (*Coyle I*, Doc. No. 47).

On May 6, 2008, Plaintiffs filed in support of Plaintiffs' Summary Judgment

Motion the Affidavit of Thomas Coyle (*Coyle II*, Doc. No. 62) ("Coyle Affidavit"), with an

attached exhibit, and filed the same papers in *Coyle I*.  (*Coyle I*, Doc. No. 48).  On May

8, 2008, Third-Party Defendant Con-Way filed a Memorandum of Law in Opposition to

Crown's Motion for Summary Judgment (*Coyle II* Doc. No. 63) ("Con-Way

Memorandum").

On May 13, 2008, Plaintiffs filed a document (*Coyle II*, Doc. No. 64) containing

the Affidavit of John Lloyd Egan, Esq,  in further support of Plaintiffs' Sanctions Motion

("Second Egan Affidavit"), the Affidavit of John Lloyd Egan, Esq. in opposition to *Coyle*

*II* Defendant's Sanctions Motion ("Third Egan Affidavit"), with attached; Plaintiffs filed

the same papers in *Coyle I*.  (*Coyle I*, Doc. No. 49).   On May 15, 2008, Third-Party

Defendant Con-Way Central Express, a part of Con-Way Transportation Services, Inc.

("Con-Way"), a foreign corporation,[4] filed the Affirmation of Lisa T. Sofferin, Esq., in

Opposition to Plaintiffs' Motion to Preclude Expert Testimony (*Coyle II*, Doc. No. 65)

("Sofferin Affirmation"), with attached exhibits. On May 20, 2008, *Coyle II* Defendant

filed in opposition to Plaintiffs' Sanctions Motion the Reply Affidavit of William C.

Altreuter, Esq. (*Coyle II*, Doc. No. 66) ("Fifth Altreuter Affidavit"), and *Coyle I* Defendants

filed an identical affidavit in *Coyle I*.  (*Coyle I*, Doc. No. 50).

On May 30, 2008, the *Coyle II* Defendant filed in further support of *Coyle II*

Defendant's Sanctions Motion the Reply Affidavit of William C. Altreuter, Esq. (*Coyle II*,

---

[4] Crown does not specify Con-Way's state of incorporation, but Con-Way admits this allegation. Con-Way Answer (*Coyle II*, Doc. No. 20, ¶ 4).

Doc. No. 67) ("Sixth Altreuter Affidavit"), with attached exhibits, and *Coyle I* Defendants filed identical papers in *Coyle I*.  (*Coyle I*, Doc. No. 51).

On June 5, 2008, Plaintiffs filed the Reply Affidavit of John Lloyd Egan, Esq. (*Coyle II*, Doc. No. 68) ("Fourth Egan Affidavit"), with attached exhibits, and also filed an identical affidavit in *Coyle I*.  (*Coyle I*, Doc. No. 52).  On June 6, 2008, the *Coyle II* Defendant filed a motion to strike the Fourth Egan Affidavit (*Coyle II*, Doc. No. 69) ("*Coyle II* Defendant's Motion to Strike"), supported by the attached Affidavit of William C. Altreuter, Esq. ("Seventh Altreuter Affidavit"), and *Coyle I* Defendants filed an identical motion with the same supporting papers in *Coyle I*.  (*Coyle I*, Doc. No. 53).  On June 23, 2008, Plaintiffs filed in opposition to *Coyle II* Defendant's Motion to Strike the Reply Affidavit of John Lloyd Egan, Esq. (*Coyle II*, Doc. No. 71) ("Fifth Egan Affidavit"), and also filed the same affidavit in *Coyle I*.  (*Coyle I*, Doc. No. 55).

Oral argument was deemed unnecessary.

Based on the following, Plaintiffs' Summary Judgment Motion is DENIED; the *Coyle II* Defendant's Summary Judgment Motion is DENIED; the *Coyle II* Defendant's Sanctions Motion is GRANTED in part and DENIED in part; Plaintiffs' Sanctions Motion is DENIED; the *Coyle II* Defendant's Motion to Strike is GRANTED.


## FACTS[5]

On November 4, 1986, Leasco purchased real property located at 850 Aero Drive, in Cheektowaga, New York ("the Premises"), from Terminal Rentals, Inc. (Halls

---

[5] The Facts are taken from the pleadings and motion papers filed in this action.

Motor Freight) ("Terminal Rentals").  On December 30, 1986, Leasco was merged into

Centra, which made a capital contribution of all of Leasco's real estate assets, including

the Premises, to Central Transport.  On January 1, 1990, Central Transport made a

capital contribution of all its real estate assets, including the Premises, to Crown

Enterprises, Inc., a Tennessee corporation which, on August 31, 1990, Crown

Enterprises, Inc., a Tennessee corporation, merged into Crown Enterprises, Inc., a

Michigan corporation ("Crown").

On September 25, 1992, Crown and Con-Way entered into a lease agreement

("the Lease"),[6] whereby Crown, as the Landlord of the Premises, agreed to lease the

Premises to Con-Way for Con-Way's use in operating a commercial trucking business.

The Lease provided that prior to executing the Lease, Con-Way would perform a "walk-

through" of the Premises to complete an inspection of the Premises to determine

whether Crown needed to make any repairs to ensure the Premises were "in good

working order" at the time of delivery of possession of the Premises to Con-Way.  Lease

§ 5.3.  Any repairs to be made were listed in Exhibit B of the Lease, including "Repair

cracked and sunken dock, as needed."  Lease, Exh. B.1.F.  With the exception of

repairs listed in Exhibit B, the Premises were to be delivered in "as is" condition.  Lease

§ 5.3.

Crown, as the Landlord, was obligated under the Lease, at its own cost, to

A.     Maintain in good condition, repair and/or replace the structural parts of the
       building, which structural parts are the foundations, load-bearing and
       exterior walls, subflooring and roof components;

---

[6] A copy of the Lease is attached as Exhibit H to the Second Altreuter Affidavit (attached to *Coyle I*, Doc. No. 38).

8

B.    Major repairs and/or replacements of (i) the heating and air conditioning system servicing the Leased Premises, and (ii) all unexposed electrical, gas, plumbing, sewage and piping systems, including, without limitation, those portions of the systems lying outside the Leased Premises; and

C.    Major repairs of the yard area, including without limitation, all paved and graveled areas.

Lease § 7.1.

Con-Way, as the Tenant, was obligated under the Lease, at its own cost, to

A.    Maintain in good condition the interior portions of the Leased Premises;

B.    Routine maintenance and minor repairs of (i) the heating and air conditioning systems servicing the Leased Premises, and (ii) all unexposed electrical, gas, plumbing. sewage and piping systems, including, without limitation, those portions of the systems lying outside the Leased Premises, and

C.    Routine maintenance and minor repairs of the yard area, including without limitation, all paved and graveled areas.

Lease § 7.2.

The Lease defines "routine maintenance and minor repairs" as "any repairs or maintenance the cost of which are not more than Five Hundred and 00/100 ("$500.00) Dollars per single repair charge or maintenance expense," not to exceed " $10,000 in the aggregate over the initial term of the Lease.  Lease § 7.  Crown, as Landlord,, also retained "the right to enter upon the Leased Premises at all reasonable hours for the purpose of inspecting the same."  Lease § 7.4.

Pursuant to the Lease, Con-Way, as Tenant of the Premises, agreed to "indemnify Landlord [Crown] and save it harmless from and against any and all claims, actions, suits, damages, liabilities, loss, orders, decrees, or judgments and expenses of any kind or nature whatsoever, including without limitation, attorneys' fees, costs and expenses . . . ."  Lease § 9 ("the Hold Harmless Covenant").  Crown, as the Premises' Landlord, to indemnify Con-Way, as Tenant, for any liability attributed to negligent acts

or omissions of Crown as the Landlord.  Lease § 9.1.2 ("the Indemnification Clause").

The Lease further provides for an inspection of the Premises by both Crown and Con-Way prior to the Lease's Commencement Date which, if not performed, would permit the Landlord to "assume that Tenant [Con-Way] fully accepts the Leased Premises in "as is" condition."  Lease § 19.8 ("Inspection Clause").  Crown maintains that Con-Way never conducted such "final inspection" and, as such, accepted the Leased Premises in "as is" condition.  The Lease was amended on May 1, 1994, March 18, 1996, September 15, 1997, and August 30, 1999, each time extending the term of the Lease.

In a letter to Crown's Real Estate Portfolio Manager Larry Jacobs ("Jacobs"), dated August 8, 2002, Con-Way's Manager of Properties Susan Carpenter ("Carpenter") advised Crown in accordance with § 7 of the Lease, that significant repairs to the "yard area" of the Premises were needed, estimated to cost between $ 42,000 and $ 65,000, and requested Jacobs contact Carpenter "immediately so that we can discuss in further detail."  Second Altreuter Affidavit (*Coyle II* Doc. No. 51) Exh. J.  On August 16, 2002, Jacobs forwarded Carpenter's letter to Dick Domenicki of Crown, stating "I am somewhat surprised to receive these in that we [Crown] recently completed an extensive asphalt repair job at the terminal.  Please review the [repair] estimates to determine exactly what they are requesting. . . .  Let me know what you [*sic*] thoughts are on their request."  *Id*. Exh. M.

The Lease, as amended on August 30, 1999, remained in effect on February 7, 2003, when, Coyle, in connection with his employment by Con-Way, drove a tow-motor used to unload freight from trucks across a cracking and sinking portion of a concrete

slab floor of a truck terminal located at loading bay dock 22 of the Premises.  The poor condition of the concrete slab floor allegedly jostled the moving tow motor, causing Plaintiff to fall from the tow motor and sustain injuries.  Following the incident, Crown made repairs to the concrete slab floor at loading bay dock 22, reportedly as an accommodation to Con-Way with whom Crown was attempting to renegotiate the Lease.

In support of their respective summary judgment motions, Plaintiffs and Crown have submitted expert evidence as to whether the concrete slab floor at loading bay dock 22 constitutes a structural part of the building located on the Premises, for which Crown, as the Landlord, retained responsibility, or is an interior portion of the Premises, the condition and maintenance of which was Con-Way's as the Tenant.

## DISCUSSION

### 1.   Motions for Sanctions and to Strike

Preliminarily, the undersigned addresses *Coyle II* Defendant's Motion for Sanctions, Plaintiffs' Motion for Sanctions, and *Coyle II* Defendant's Motion to Strike.  In particular, Crown[7] moves for an order pursuant to Fed. R. Civ. P. 37(b) ("Rule 37(b)"), precluding Plaintiffs from offering expert proof by architect Anthony J. Cartonia, Jr. ("Plaintiffs' expert" or "Cartonia") and the building plans for the Premises on which Cartonia relied in preparing a report in opposition to *Coyle II* Defendant's Summary

---

[7] Although identical motions for sanctions and to strike were filed by *Coyle I* and *Coyle II* Defendants, because this Decision and Order addresses only *Coyle II*, the discussion refers only to *Coyle II* Defendant Crown.

Judgment Motion.  Third Altreuter Affidavit ¶ 1.  According to Crown, Plaintiffs failed to

identify Cartonia as their expert witness by December 31, 2007, as required by the

court's September 13, 2007 Amended Scheduling Order (*Coyle II*, Doc. No. 38)

("September 13, 2007 Amended Scheduling Order").[8]  Third Altreuter Affidavit ¶ 3.

Plaintiffs maintain they submitted the expert witness evidence only to rebut the

assertions by Crown's expert, Tommaso Briatico ("Briatico"), that no building plans for

the Premises exist.  Second Egan Affirmation ¶ 13; Fourth Egan Affidavit ¶ 4.

Plaintiffs move pursuant to Rule 37(b) to preclude Crown from offering expert

proof by Crown's experts Briatico and Dr. Richard Cowan ("Dr. Cowan") because Crown

failed to include in its expert witness disclosure a list of all cases in which Briatico and

Dr. Cowan have testified as an expert at trial or by deposition, in accordance with Rule

26(a)(2).  Second Egan Affirmation ¶ 4.  Crown responded in opposition to Plaintiff's

Sanctions Motion that no Briatico has not previously testified as an expert in any

litigation, and that on May 5, 2008, Crown provided Plaintiffs with a list of the cases in

which Dr. Cowan has testified during the previous five years, thereby curing any defect

in Crown's expert witness disclosure.  Fourth Altreuter Affidavit ¶ 2 and Exhibits A and

B.  Crown also responds that Plaintiffs "have been supplied with eighty-two Expert

Witness Interrogatories Responses and Rule 26 Disclosures" for both Briatico and Dr.

---

[8] Specifically, Plaintiffs were ordered to "identify any expert witnesses through interrogatories and provide reports pursuant to Fed. R. Civ. P. 26 by **December 31, 2007**," whereas Crown was ordered to "identify any expert witnesses through interrogatories and provide reports pursuant to Fed. R. Civ. P. 26 by **February 29, 2008**." September 13, 2007 Amended Scheduling Order (*Coyle II*, Doc. No. 38) (emphasis in original).

Cowan.  Fourth Altreuter Affidavit ¶ 6 and Exhs. C and D.[9]  Crown further maintains that

Plaintiffs are challenging Crown's expert witness evidence because Plaintiffs did not

anticipate Crown would offer a defense based on a plain meaning of the Lease and its

amendments, and that Plaintiffs' expert, Cartonia, would not have been able to obtain

the information presented in Plaintiffs' expert witness report without trespassing on the

Premises.  Fourth Altreuter Affidavit ¶¶ 9-10.  Plaintiffs argue that Crown's belated

attempts to correct Crown's expert witness disclosure are insufficient to avoid Rule

37(b) sanctions because the additional disclosure "fails to provide a report of Mr.

Briatico and Dr. Cowan much less the basis of their testimony or grounds in support

therefor."  Second Egan Affidavit ¶ 4.

Crown replied by essentially reiterating their earlier assertions that Crown timely

supplied Plaintiffs with the requisite expert witness disclosures and corrected any

deficiencies in such disclosures within two days of Plaintiffs' request.  Fifth Altreuter

Affidavit ¶¶ 2-4.  Crown further asserts that Cartonia was neither identified nor disclosed

as an expert until April 16, 2008, three and a half months after Plaintiffs' expert witness

disclosure cut-off of December 31, 2007, and that Cartonia must have trespassed on

the Premises to conduct and inspect the premises as Cartonia maintains.  Sixth

Altreuter Affidavit ¶¶ 3-6.  Third-Party Defendant Con-Way argues in opposition to

Plaintiffs' Motion for Sanctions that insofar as Plaintiffs seek to preclude Dr. Cowan from

presenting expert witness evidence, on February 23 and 29, 2008, Crown and Con-

---

[9] Although Altreuter specifies that the "eighty-two Expert Witness Interrogatories Responses and Rule 26 Disclosures" pertain to Briatico, a review of such interrogatories response and disclosures establishes they pertain to both Briatico and Dr. Cowan.

Way, respectively, jointly disclosed Dr. Cowan as their medical expert as required by

the September 13, 2007 Amended Scheduling Order.  Sofferin Affirmation ¶¶ 2-5.  Con-

Way further asserts that because the only objection Plaintiffs make to Dr. Cowan's

expert disclosure is a failure to include a list of cases in which Dr. Cowan has testified,

which defect was cured shortly after Plaintiffs filed their Sanctions Motion, and because

Plaintiffsdid not previously object to Dr. Cowan as an expert witness, Plaintiffs'

Sanctions Motion should be denied at least insofar as the motion seeks to preclude Dr.

Cowan's expert witness evidence. *Id.* ¶¶ 6-26.  Plaintiffs argue in turn that because

Cartonia is offered as a rebuttal expert to Crown's expert witness evidence, the time for

expert witness disclosure of Cartonia was extended.  Fourth Egan Affidavit.

Rule 37(c)(1) "'provides that a party who, without substantial justification, fails to

disclose information required by Rule 26 shall not be permitted to use as evidence at

trial the information not disclosed.'"  *Arnold v. Krause, Inc.*, 232 F.R.D. 58, 67 (W.D.N.Y.

2004) (quoting *McNerney v. Archer Daniels Midland Company*, 164 F.R.D. 584, 587

(W.D.N.Y. 1995)).  As relevant here, Rule 26 "requires the expert disclosures mandated

by Rule 26(a)(2)(A) be 'made at the time and in the sequence directed by the court.'"

*Arnold*, 232 F.R.D. at 67 (quoting Fed. R. Civ. P. 26(a)(2)(A)).  When a tardy expert

witness report is offered in opposition to summary judgment, preclusion of the proposed

expert's report and testimony is a proper sanction. *Id.* (citing *Trilogy Communications,*

*Inc. v. Times Fiber Communications, Inc.*, 109 F.3d 739, 744-45 (Fed. Cir. 1997)).

Nevertheless, it is within the district judge's discretion whether to order such evidence

be precluded as such preclusion is not required.  *Lory v. General Electric Company*, 179

F.R.D. 86, 89 (N.D.N.Y. 1998) (deciding that although district court was authorized

under Rule 16(f) to preclude plaintiff's expert witness report as sanction for failing, without good cause, to timely disclose such report, as the untimely disclosure was plaintiff's sole instance of noncompliance, and all other discovery had proceeded in accordance with the court's scheduling orders and without significant interruption, such harsh sanction was not warranted).  The exercise of the court's discretion "to fashion a remedy appropriate to the violation . . . is informed by the facts of each case, including among others any pattern of noncompliance, the relevance and probative value of the untimely disclosed evidence, and any prejudice to opposing parties." *Id*. (citing cases).

In the instant case, the record establishes that on March 4, 2008, Altreuter advised Egan that a list of Dr. Cowan's previous testimony had been requested and would be provided upon its receipt.  Fourth Altreuter Affidavit, Exh. A.  On May 5, 2008, such information was provided to Plaintiffs. Fourth Altreuter Affidavit Exh. B.  Crown's failure to provide Plaintiffs with a list of other cases in which Dr. Cowan testified was thus acknowledged within days of Crown's expert witness disclosure, and remedied by May 5, 2008, and Plaintiffs do not explain how the slight delay has prejudiced their case.  Moreover, insofar as Plaintiffs maintain that Crown "fails to provide a report of Mr. Briatico and Dr. Cowan much less the basis of their testimony or grounds in support therefor," Second Egan Affidavit ¶ 4, the record further establishes that the Expert Witness Interrogatory Responses Crown and Con-Way timely served on Plaintiffs included that Briatico had not prepared a report, but that his expert opinion was based on Briatico's inspection of the Premises, review of relevant New York Code of Rules and Regulations, review of the Lease, photographs exchanged in discovery, knowledge, experience and expertise and training in the field of architect, including the accepted

15

definitions of terms used in the Lease as relevant to the repairs requested by Con-Way to the Premises "yard area." Fourth Altreuter Affidavit, Exh. C, Response to Interrogatory No. 5. Dr. Cowan's reports were attached to Crown's Interrogatory Responses and, to the extent not set forth in such report, Dr. Cowan's opinion was based on his review of Coyle's medical records and reports, studies and other materials provided, Dr. Cowan's examination of Coyle, and his knowledge, experience, expertise and training in the field of medicine. *Id*. As such, although the Court does not condone Crown's failure to provide written reports for the opinions of Briatico and Dr. Cowan as required under Rule 26(a)(2)(B), Plaintiffs' assertion that Crown has not provided any basis for the opinions of Briatico and Dr. Cowan is without merit. Accordingly, Plaintiffs' Sanctions Motion is DENIED.

In seeking to preclude Plaintiffs' expert witness evidence, Crown asserts that Plaintiffs did not disclose Cartonia as an expert witness until after Plaintiffs were served with *Coyle II* Defendant's Summary Judgment Motion, and that Plaintiffs also failed to disclose certain building plans for the Premises on which Cartonia relies. Third Altreuter Affidavit ¶¶ 3-4.[10] Plaintiffs do not deny failing to disclose Cartonia as an expert witness until April 14, 2008, and only in opposition to *Coyle II* Defendant's Summary Judgment Motion; rather, Plaintiffs maintain they were unaware they needed to obtain an expert witness until after learning that Crown was moving for summary judgment based on the terms of the Lease and its Amendments, including which entity was responsible for

---

[10] Crown fails to explain the relevancy of its assertion that Cartonia's inspection of the Premises after the close of discovery could have been conducted only be trespassing on the property given that the Premises is surrounded by a fence and, thus, not open to the general public. Third Altreuter Affidavit ¶ 4. Nor does Crown submit any authority that such trespass, even assuming it occurred, is a ground for preclusion of evidence under federal law.

repairs at the Premises, rather than solely on the conditions of the Premises at the time of the incident.  Second Egan Affirmation ¶ 13.

Although Plaintiffs' failure to disclose its expert witness evidence by December 31, 2007 did violate this court's September 13, 2007 Amended Scheduling Order, precluding Plaintiffs from offering such expert witness evidence would significantly impair Plaintiffs' ability to prove their case.  Moreover, such failure is Plaintiffs' only act of noncompliance with this court's orders.  Under these circumstances, an order precluding Plaintiffs' expert witness evidence is too harsh a remedy.  *Lory*, 179 F.R.D. at 89 (harsh sanction of preclusion not warranted where untimely disclosure was plaintiff's sole instance of noncompliance).  Nevertheless, noncompliance with the court's scheduling orders "must result in appropriate consequences to the offending party if the deadlines are to carry meaning."  *Id.*  Here, the court finds the appropriate sanction is an order directing Plaintiffs to provide Crown with copies of the building plans for the Premises on which Cartonia relies, and making Cartonia available for deposition by Crown with any expert fees charged in connection with such deposition, and the expenses of such deposition, but not Crown's attorney fees, to be borne by Plaintiffs.  *Coyle II* Defendant's Sanctions Motion is thus GRANTED in part and DENIED in part.

Finally, with regard to *Coyle II* Defendant's Motion to Strike, Crown moved to strike the Fourth Egan Affidavit as a sur-reply filed without the court's permission and as cumulative of other papers previously filed.  Seventh Altreuter Affidavit ¶¶ 1-4.  Plaintiffs argue in opposition that the relevant briefing schedule "was silent as to the right of Plaintiff's Counsel to provide a Sur-Reply affidavit" and that the Fourth Egan Affidavit

"was supplied to provide the Court with a more detailed picture of the plaintiff's [*sic*] argument."  Fifth Egan Affidavit ¶ 2.

It is within the court's discretion whether to consider papers filed without the court's permission.  *See Aurora Loan Services, Inc., v. Posner, Posner & Associates, P.C.*, 513 F.Supp.2d 18, 19 (S.D.N.Y. 2007) (observing the court has discretion whether to strike motion papers); *Dunbar for and on Behalf of N.L.R.B. v. Landis Plastics, Inc.*, 977 F.Supp. 169, 173 n. 3 (N.D.N.Y. 1997) (exercising discretion in considering surreply letter submitted without the court's permission).  Significantly, sur-reply papers are generally permitted only where new evidence is presented on a party's reply brief or affidavit in further support of its summary judgment motion.  *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 767 F.Supp. 1220, 1235 (S.D.N.Y. 1991), *rev'd on other grounds*, 967 F.2d 742 (2d Cir. 1992).

In the instant case, much of the Fourth Egan Affidavit's content is cumulative of information already in the record.  Further, to the extend such information is not cumulative, but raises new issues, the information does not change the court's findings with regard to either Plaintiffs' or *Coyle II* Defendant's Summary Judgment Motions, as discussed below.  As such, *Coyle II* Defendant's Motion to Strike is GRANTED.

**2.      Summary Judgment Motions**

Both Plaintiffs and *Coyle II* Defendant have filed motions seeking summary judgment of all claims in their favor.  Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Rattner v. Netburn*, 930 F.2d 204, 209 (2d Cir. 1991).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322.  Once a party moving for summary judgment has made a properly supported showing as to the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).

Plaintiffs specifically argue in support of summary judgment that *Coyle II* Defendant Crown admits prior knowledge of the concrete slab floor's deteriorating condition that caused the incident, and control of the Premises such that, despite leasing the Premises to Third-Party Defendant Con-Way, Crown cannot escape liability for Plaintiffs' injuries.  First Egan Affirmation ¶ 2.  Crown seeks summary judgment against both Plaintiffs and Third-Party Defendant Con-Way on the basis that Crown, at all times relevant to the instant case, was an out-of-possession landlord of the Premises and, as such, is not responsible for the Premises deteriorating condition,  Second Altreuter Affidavit ¶¶ 7-24, and that Con-Way was, pursuant to the Lease's indemnification and insurance provisions, required to indemnify and hold harmless Crown for any liabilities "arising from or out of the condition of the use, occupancy,

possession, or management" of the Premises by Con-Way.  *Id.* ¶¶ 25-28.[11]  Con-Way

argues in opposition to *Coyle II* Defendant's Summary Judgment Motion that it is

premature for the court to rule on the indemnification issue absent any determination as

to whether Crown was negligent to Coyle.  Con-Way Memorandum at 3-4.  Con-Way

further maintain that Crown wrongly suggests that Con-Way's insurer's denial of

coverage establishes Con-Way breached § 9.2 of the Lease requiring Con-Way, as the

Premises' Tenant, to "keep in full force and effect a general liability insurance policy with

respect to the Leased Premises."  Con-Way Memorandum at 5-6.  Evidence submitted

in support of both summary judgment motions establishes issues of material fact

precluding summary judgment in favor of either Plaintiffs or Crown.

Plaintiffs maintain they are entitled to summary judgment because evidence in

the record establishes that Crown does not deny having notice of the deteriorating

conditions of the subject dock at the Premises prior to the February 7, 2003 incident in

which Coyle was injured, yet failed to make repairs to the dock.  First Egan Affirmation ¶

2.  In support of summary judgment, Plaintiffs make numerous references to evidence in

the record establishing that certain Crown employees received actual or constructive

notice that the concrete floor at loading bay door 22 was cracked and sinking.  First

Egan Affirmation, *passim*.  Crown does not deny Plaintiffs' assertions regarding

knowledge of the conditions of the loading bay's concrete floor but, rather, maintains

that Con-Way, as the Premises' Tenant, rather than Crown, as the Premises' Landlord,

---

[11] The *Coyle II* Defendant's further assertion that the *Coyle I* Defendants, as a result of a series of mergers and asset transfers, had no property interest in the Premises at the time of the incident and, as such, cannot be held liable for Plaintiffs' injuries, Second Altreuter Affidavit ¶¶ 5-6, is irrelevant to resolving the motions pending in *Coyle II* and, as such, is not addressed in this Decision and Order.

was responsible for such conditions.  However, as discussed in connection with *Coyle II*

Defendant's Summary Judgment Motion, *infra*, at 21-26, there is an issue of fact as to

whether Crown or Con-Way was responsible for the condition of the Premises, including

the loading bay dock at door 22 at the time of the incident.  Significantly, if the trier of

fact determines that Con-Way, rather than Crown, was responsible for the conditions of

the Premises where the incident occurred, then Plaintiffs will be unable to recover

against Crown for their injuries.  As such, a material issue of fact is presented requiring

trial and Plaintiffs' Summary Judgment Motion therefore is DENIED.

As for *Coyle II* Defendant's Summary Judgment Motion, insofar as Crown

maintains that it was, at all times relevant to this action, an "out-of-possession landlord"

of the Premises and, as such, without any legal responsibility for the conditions of the

Premises, under New York law, "an out-of-possession owner will not be liable for

injuries that occur on [its] premises unless it has retained control over the premises or is

contractually obligated to repair or maintain the premises."  *Richardson v. Yasuda Bank*

*and Trust Co.*, 772 N.Y.S.2d 595, 595 (2d Dep't. 2004).  Thus, an out-of-possession

owner or lessor is not liable for injuries that occur on the premises unless the owner or

lessor has retained control over the premises or is contractually obligated to repair or

maintain the premises.  *Putnam v. Stout*, 345 N.E.2d 319, 325 (N.Y. 1976).

In the instant case, the relevant portions of the Lease provides that Crown, as the

Landlord, retained responsibility for maintaining, repairing and replacing structural parts

of the building, the heating and air conditioning systems servicing the Premises, all

unexposed electrical, gas, plumbing, sewage and piping systems including those

portions lying outside the Premises, and major repairs of the yard area.  Lease § 7.1.A-

C.  Crown does not deny this obligation.  Rather, Crown maintains that it was specifically exempted from responsiblity for the area in which the February 7, 2003 incident occurred, *i.e.*, the cracking and sinking portion of a concrete slab floor of a truck terminal located at loading bay dock 22 of the Premises.

Specifically, the Lease provides that prior to initially executing the Lease on September 25, 1992, Con-Way would perform a "walk-through" of the Premises to complete an inspection of the Premises to determine whether the Landlord needed to make any repairs to ensure the Premises were "in good working order" at the time of delivery of possession of the Premises to Con-Way on October 1, 1992.  Lease § 5.3. Any repairs to be made were listed in Exhibit B of the Lease, including "Repair cracked and sunken dock, as needed."  Lease, Exh. B.1.F.  With the exception of repairs listed in Exhibit B, the Premises were to be delivered in "as is" condition.  Lease § 5.3.  Crown maintains that the Lease's Inspection Clause, Lease § 19.8, calls for a "final inspection" of the Premises by both Landlord and Tenant prior to the Lease's Commencement Date which, if not performed, would permit the Landlord to "assume that Tenant fully accepts the Leased Premises in "as is" condition," regardless of any repairs listed on Exhibit B. Second Altreuter Affidavit ¶¶ 13-15.

Accordingly, in support of summary judgment against Plaintiffs and Con-Way, Crown submits a copy of an internal Crown file memorandum stating that because Con-Way failed to "cause a joint inspection report to be completed prior to the inspection date," Con-Way accepted the Premises in "as is" condition.  Sixth Altreuter Affidavit, Exh. I.  The memorandum further instructs that the "move-in inspection requirement" should be removed from several leases, including the Lease between Crown and Con-

Way at issue in the instant case.  *Id*.  Con-Way also submits a copy of a letter from C.C.

Eastern Leasing Manager Jeff Beaudoen ("Beaudoen"), advising Con-Way employee

Jeffrey L. Kiel ("Kiel"), that Crown's predecessor, C.C. Eastern, was rejecting Kiel's

recent request for monetary reimbursement for repairs Con-Way made to the overhead

doors at the Premises.  *Id*.  Crown maintains the memorandum establishes that Con-

Way's failure to conduct the final walk-through for the joint inspection required under

Lease § 19.8 negated Crown's responsibility for repairing the items listed in Exhibit B to

the Lease.  Sixth Altreuter Affidavit ¶¶ 33-34.  In particular, although "overhead doors"

were among the items listed in Exhibit B as needing repairs by C.C. Eastern prior to

delivering possession of the Premises to Con-Way, Beaudoen stated that C.C. Eastern

was "question[ing] the validity of the submitted repairs since they occurred during the

period 3/94 through 5/95, some 18 months after the commencement date of October 1,

1992," *id*., implying that Con-Way's failure to conduct a final inspection prior to taking

possession of the Premises on October 1, 1992, also negated the Landlord's

responsibility to make repairs to the overhead doors.

Crown also submits copies of correspondence exchanged between Carpenter

and Jacobs including Carpenter's August 8, 2002 letter advising Crown that significant

repairs to the "yard area" of the Premises were needed, estimated to cost between

$42,000 and $ 65,000, and requesting Jacobs contact Carpenter "immediately so that

we can discuss in further detail," Second Altreuter Affidavit (*Coyle II* Doc. No. 51) Exh.

J, and Jacobs's August 16, 2002 internal correspondence to Domenicki stating "I am

somewhat surprised to receive these in that we [Crown] recently completed an

extensive asphalt repair job at the terminal.  Please review the [repair] estimates to

determine exactly what they are requesting. . . .  Let me know what you [*sic*] thoughts are on their request."  *Id*. Exh. M (bracketed material added).  According to Crown, such correspondence references only the "yard area" of the Premises, and does not mention any concrete slab floor requiring repairs and that Carpenter often attempted to shift tenant responsibilities for the Premises to Crown notwithstanding the Lease's provisions.  Sixth Altreuter Affidavit ¶¶ 27-31.

A careful reading of the Lease, however, fails to substantiate Crown's assertion that an inspection pursuant to the Inspection Clause is such a "final inspection" which, if not performed, negates the Landlord's responsibility for making the repairs listed in Exhibit B, including to the "cracked and sunken dock, as needed."  Lease, Exh. B.1.F. Moreover, even if such a "final inspection" was required, nothing in the record establishes that Con-Way's failure to participate in the inspection in any invalidates § 7.1 of the Lease by which Crown, as the Landlord, remained responsible for maintaining in good condition and repairing or replacing certain parts of the Premises, including, as relevant, "the structural parts of the building, which structural parts are the foundations, load-bearing and exterior walls, subflooring and roof components. . . ."     Lease § 7.1.A.

Crown maintains that the cracking and sinking portion of the concrete slab floor of a truck terminal located at loading bay dock 22 of the Premises where the February 7, 2003 incident in which Coyle sustained his injuries occurred is not a "structural part of the building" at the Premises for which Crown remained responsible, and submits the affidavit of Crown's expert witness, New York State Registered Architect Tommaso Briatico ("Briatico"), in support of such contention.  Second Altreuter Affidavit ¶¶ 19-21,

and attached Affidavit of Tommaso Briatico ("Briatico Affidavit").  According to Crown, the concrete slab floor is "intended for and subject to wear and tear 'and abuse - - due to traffic on its surface, and due to occasional substantial impact loads caused by the trucks which come into contact with the dock bumpers.'" Second Altreuter Affidavit ¶ 19 (quoting Briatico Affidavit ¶ 5).  Crown further maintains that the term "foundation" as used in Lease § 7.1.A has a "clear and unambiguous meaning" which is limited to "the pour-in-place concrete wall" projecting four feet above the finished grade and serves to transfer loads to the ground. *Id.* ¶ 20 (citing Briatico Affidavit ¶ 4).  Because Crown interprets the term "foundation" in accordance with Briatico's explanation, the concrete slab floor cannot be considered part of the structure of the building at the Premises for which Crown remained responsible pursuant to Lease § 7.1.A.  *Id.* ¶¶ 21-23.

In opposition to Crown's request for summary judgment, and in support of Plaintiffs' Summary Judgment Motion, Plaintiffs rely on the opinion of their expert witness, New York State Registered Architect Anthony J. Cartonia, Jr. ("Cartonia"), for the proposition that "the extensive cracking and gaps in the concrete floor are caused by wholly inadequate sub-floor construction, based in part upon the . . . attached architectural drawings . . . ."  First Egan Affidavit ¶ 14 (quoting attached Affidavit of Anthony J. Cartonia, Jr. ("Cartonia Affidavit"), ¶ 9).  As such, the concrete slab floor's deteriorated condition that caused the February 7, 2003 incident could be attributed to the failure of the building's sub-floor, which is part of the building's structure for which Crown remained responsible.  Cartonia Affidavit ¶ 9.  According to Plaintiffs, because the sub-floor's construction was inadequate, the cracking and sinking of the concrete slab floor necessitated repair before the Lease was initially executed on September 25,

1992, and would have continued to deteriorate as precipitation drained through the cracking and sinking dock, exacerbating soil consolidation, resulting in more sinking. *Id*. Cartonia further states that the term "yard area" as used in the Lease includes all "paved areas" which, in architectural parlance, refers to "a hard surface used as a wearing surface which is placed over a properly prepared sub-grade.  This would include the sub-floor concrete slab as referred to in this [Cartonia] affidavit and is the subject matter of this proceeding."  Cartonia Affidavit ¶ 11.

Based on the record, whether Crown or Con-Way was responsible for the condition of the concrete slab floor, where Coyle sustained his injuries, under the terms of the Lease is an unresolved issue of fact which the undersigned cannot decide on summary judgment. *See Diamond v. Sokol*, 468 F.Supp.2d 626, 636 n. 9 (S.D.N.Y. 2006) ("opinions of dueling experts are issues for trial; defendant cannot win summary judgment on the strength of a contested expert opinion.").

Further, insofar as Crown seeks summary judgment against Con-Way, despite the Lease's Hold Harmless Covenant, Lease § 9.1, there is evidence in the record that Con-Way attempted to have Crown make repairs to the area of the Premises in which the February 7, 2003 incident occurred, and where Crown had previously made some repairs while the Premises were leased to Con-Way. *See, e.g.*, Second Altreuter Affidavit Exhs. J and M.  Notably, the Lease's Indemnification Clause specifically exempts Con-Way, as the Tenant, from any liability attributed to negligent acts or omissions of Crown as the Landlord.  Lease § 9.1.2.

Accordingly, an issue of fact exists as to whether Crown is exempt from liability to Plaintiffs under Lease § 9.1, or is liable to Con-Way under § 9.1.2, and *Coyle II*

26

Defendant's Summary Judgment Motion is DENIED with regard to both Plaintiffs and Third-Party Defendant Con-Way.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' Summary Judgment Motion (Doc. No. 45) is DENIED; *Coyle II* Defendant's Summary Judgment Motion (Doc. No. 51) is DENIED; *Coyle II* Defendant's Sanctions Motion (Doc. No. 56) is GRANTED in part and DENIED in part; Plaintiffs' Sanctions Motion (Doc. No. 58) is DENIED; *Coyle II* Defendant's Motion to Strike (Doc. No. 69) is GRANTED.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March 19, 2009
            Buffalo, New York